**KELLEY DRYE & WARREN LLP**
Kenneth O. Corley (SBN 024285)
515 Post Oak Blvd., Suite 900
Houston, TX 77027
Telephone: (713) 355-5006
Facsimile: (713) 355-5001
kcorley@kelleydrye.com

Becca J. Wahlquist (*pro hac vice forthcoming*)
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4900
Facsimile: (213)547-4901
bwahlquist@kelleydrye.com

*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fernando Mancilla,<br><br>    Plaintiff,<br><br>  v.<br><br>Ultimate Fitness Group, LLC d/b/a Orangetheory Fitness, Austin Fitness Group, LLC, and Lucky7th LLC,<br><br>    Defendants. | Case No. CV-24-00568-TUC-RM (JR)<br><br>Assigned to Hon. Rosemary Márquez<br><br>**ULTIMATE FITNESS GROUP, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(2) FOR LACK OF PERSONAL JURISDICTION; IN THE ALTERNATIVE, MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)**<br><br>**[Declaration of David Carney filed concurrently in support of Rule 12(b)(2) Motion to Dismiss]** |

DEFENDANT UFG'S MOTION TO DISMISS FAC

Defendant Ultimate Fitness Group, LLC d/b/a Orangetheory Fitness ("UFG") hereby moves to dismiss the claims against it with prejudice pursuant to Federal Rules of Civil Procedure, Rule 12(b)(2), and in the alternative Rule 12(b)(6).[1]

Plaintiff alleges that that he received various texts and telephone calls involving Orangetheory-branded fitness studios that were placed in violation of the Telephone Consumer Protection Act ("TCPA").  UFG, the franchisor of Orangetheory® fitness studios, had previously informed Plaintiff, during the parties' meet and confers, of the deficiencies in his Original Complaint against UFG; Plaintiff decided to stand on that Complaint.  However, after UFG filed a motion to dismiss setting out these deficiencies, Plaintiff changed course and filed a First Amended Complaint ("FAC") in an attempt to salvage this suit against UFG, while also adding new allegations against two franchise owners.  He asserts TCPA claims against UFG on behalf of himself and a putative nationwide class, with subclass claims involving marketing communications from Austin Fitness Group, LLC ("Austin Fitness") and Lucky7th LLC ("Lucky7th"), two independent franchisees with Orangetheory-brand studios in Arizona.

However, despite Plaintiff's many (and desperate) additions to his original factual allegations, the FAC fails to establish that this Court has personal jurisdiction over UFG. Defendant UFG is a Florida-based franchisor that is not at home in Arizona and that did not reach into Arizona to contact Plaintiff, or cause Plaintiff to be contacted in Arizona. The FAC thus should be dismissed as to UFG under Rule 12(b)(2), given the lack of general or specific jurisdiction evidenced by the jurisdictional facts provided by UFG in connection with this Motion.  *See* Part I.

Alternatively, the Court should dismiss the FAC pursuant to Rule 12(b)(6) for Plaintiff's continued failure to state a plausible claim of TCPA liability against UFG (a franchisor) under either direct or vicarious theories of liability.  *See* Part II.

---

[1] Defendant UFG hereby confirms that the parties met and conferred on this basis of this Motion as required by Local Rule 12.1.

CASE NO. CV-24-00568-TUC-RM (JR)
DEFENDANT UFG'S MOTION TO DISMISS FAC

## I.   MOTION TO DISMISS UFG PURSUANT TO FRCP 12(B)(2)

UFG is a global franchising operation known for its trademarked Orangetheory® method:  heart-rate-monitored, group workouts designed to stimulate metabolism and increase energy output, with a focus on reaching the "Orange Zone" for at least 12 minutes during each workout.  [*See* April 11, 2025 Declaration of David Carney ("Carney Decl.") at ¶¶ 7–9.][2]  Over 1,500 franchised locations worldwide pay UFG for the right to use the Orangetheory® brand name and methods in conjunction with their own fitness studio(s). [*Id.*]  UFG is a Delaware limited liability company based in Boca Raton, Florida.  [*Id.* at ¶¶ 6–7.]  It does not own or operate any Orangetheory-brand studios in Arizona; instead, all Arizona studio locations are franchised.  [*Id.* at ¶¶ 10–13.]  UFG is thus not "essentially at home" in Arizona, and there is no general personal jurisdiction over it in Arizona.

As to specific jurisdiction for the harm Plaintiff alleges, the FAC fails to state facts sufficient to create specific jurisdiction over franchisor UFG, given the plain jurisdictional facts attested to by UFG.  As the Carney Declaration establishes, UFG has never owned or operated any of the phone numbers that contacted Plaintiff, [Carney Decl. at ¶¶ 18, 24], has never contacted Plaintiff [*id.* at ¶ 21], and did not direct any third party to send the at-issue texts or calls to Plaintiff.  [*Id.*]  UFG's activities as a franchisor are not directed specifically at Arizona and UFG did not reach into Arizona in connection in relation to the complained-of communications.  Therefore, specific jurisdiction over UFG does not exist and UFG should be dismissed for lack of personal jurisdiction.  *See* Rule 12(b)(2).

### MEMORANDUM OF POINTS AND AUTHORITIES

Personal jurisdiction over a defendant must exist in one of two variants—general or specific—before a federal court can adjudicate an action in federal court.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011).  General jurisdiction

---

[2] The Carney Declaration, filed concurrently, is offered solely in support of the Rule 12(b)(2) motion, as was the original Carney Declaration filed with UFG's initial Motion to Dismiss.  The alternative Rule 12(b)(6) motion contained in Part II seeks dismissal based on the FAC's facial failure to state a claim, and does not rely upon the facts provided in the Declaration.

CASE NO. CV-24-00568-TUC-RM (JR)
DEFENDANT UFG'S MOTION TO DISMISS FAC

(or "all purpose" jurisdiction) permits a court to adjudicate any cause of action against the corporate defendant only where the defendant's "affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014)).  In contrast, specific personal jurisdiction is available only when the particular claim in suit "arise[s] out of or relate[s] to the defendant's contacts with the *forum*." *Bristol-Meyers Squibb Co. v. Superior Ct. of California, San Francisco Cty.,* 137 S. Ct. 1773, 1780 (2017) (emphasis added) (quoting *Daimler,* 571 U.S. at 127). In either case, a court's exercise of authority over a defendant must comport with the constitutional due process principles ensuring that maintenance of the lawsuit in the forum does not offend "traditional notions of fair play and substantive justice." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (citation omitted).

Here, it would not comport with the Due Process Clause or the requirements of personal jurisdiction for UFG—a Delaware company with its principal place of business in Florida—to be required to defend this lawsuit **in Arizona**.  UFG itself did not place the calls or texts at issue, [*see* Carney Decl. ¶¶ 17–24], and UFG's general conduct in operating its franchising business is not alleged to be directed at Arizona.  Further, UFG did not authorize its franchisees to send text messages or place calls to Plaintiff or others in Arizona on UFG's behalf.  [*See id*.]  Plaintiff does not allege that UFG did anything in Arizona or directed specifically to Arizona to allegedly ratify franchisees' calls/texts.  Because there is neither general nor specific personal jurisdiction in Arizona for Plaintiff's claims against UFG, Rule 12(b)(2) requires dismissal of UFG.

A.    **RELEVANT BACKGROUND**

1.    **Plaintiff's Allegations.**

Plaintiff claims that since 2016, he has used only one phone number (520-850-4278), which he placed on the federal Do Not Call list in 2016, 2021, and 2022.  [FAC ¶¶ 38–43.]  Plaintiff alleges that he received a total of 18 texts and 7 calls from Defendants, collectively, going back four years.  [*Id.* ¶¶ 14–15.]  Plaintiff alleges he "never provided

3

his number to Defendants, was never a customer of Defendants, and never gave permission for Defendants to send any type of communication." [*Id.* ¶ 44.] Plaintiff alleges that he responded "Stop" to two of the phone numbers, which he alleges are associated with Defendant Austin Fitness. [*Id.* ¶¶ 14(ii), 14(xix), 16–17, 46.]

Plaintiff alleges that texts and calls from 737-225-8909, 737-881-7727, and 520-300-9585 were sent by Austin Fitness, because (1) 737 is an area code from Austin, Texas where Austin Fitness is headquartered, (2) the messages reference Austin Fitness Group or Orangetheory Tucson, which he alleges is owned by Austin Fitness, and (3) the calls were from the phone number for Orangetheory Tucson. [*Id.* ¶¶ 16–18.][3] However, despite alleging that texts from 737-881-7727 were sent by Austin Fitness due to the area code and reference to Orangetheory Tucson Central, [*id.* ¶ 17], Plaintiff then contradictorily alleges that the four most recent texts from Austin Fitness's 737-881-7727 number were actually sent by UFG, the Orangetheory® franchisor. [*Id.* ¶ 14(xxii)–(xxv), 21.]

Plaintiff theorizes that UFG commandeered the phone number [*id.* ¶¶ 21–27], and—ignoring the clear sworn testimony from David Carney on this matter provided with the original Motion to Dismiss [ECF 13-1, ¶¶ 15–18]—asserts that UFG "most likely" sent him four text messages based on various unverified information he located on the Internet. [FAC ¶¶ 21–26.] But his contention that UFG took over the phone number 737-881-7727 from Austin Fitness defies reason—especially when a call to that phone number connects not to UFG, but to a Tucson Central franchise studio. [*See* Carney Decl. ¶ 24.]

In addition to baselessly alleging that four of nine texts from 737-881-7727 came from UFG, Plaintiff alleges that UFG is responsible for calls made by its franchisees based on information within a disclosure document that issued on June 4, 2024, [FAC Ex. A at 2], years after most of the at-issue calls and texts were placed. Plaintiff alleges the document (1) directs franchisees to spend a certain amount of sales on marketing, (2)

---

[3] In his original Complaint, Plaintiff did not previously disclose the STOP confirmation text message he received that identified that the source of the text was in fact Austin Fitness, not UFG. [*Compare id.* ¶ 14(iii), 16 *with* Complaint ¶ 18.]

CASE NO. CV-24-00568-TUC-RM (JR)
DEFENDANT UFG'S MOTION TO DISMISS FAC

requires franchisees to approve marketing plans prior to using, (3) gives UFG the final decision on creative messages, (4) directs franchisees to use a specified technology for contact management, and (5) indicates UFG will provide training on marketing. [*Id.* ¶ 28–32.] But even if this document related to text telemarketing (which it does not), Plaintiff makes no allegations that any of the activities discussed in the Franchise Disclosure Document are specifically directed at Arizona, versus any other place.

Finally, Plaintiff also claims that UFG "has been aware of the illegal telemarketing practices of its franchisees but has done nothing to stop it." [*Id.* ¶ 33.] Plaintiff misleadingly cites to ten litigations in which various plaintiffs alleged TCPA claims against UFG or Orangetheory® franchisees, [*id.* ¶ 5, n.1], but does not state (because he cannot) that any litigations ultimately determined that UFG or a franchisee violated the TCPA.

### 2.    The Facts Offered by UFG's Jurisdictional Declaration.

UFG, a global franchisor of Orangetheory-brand fitness studios, is a Delaware limited liability company with its principal place of business in Boca Raton, Florida. [*See* Carney Decl. at ¶¶ 6–7.] Like other global franchising operations (*i.e.,* Marriott Hotels or RE/MAX), UFG contracts with independently owned and operated franchisees who pay for the right to use the Orangetheory® brand name in conjunction with their own studio location (*i.e.,* "Orangetheory Midtown Phoenix"), to create name recognition for their business and to advertise that they are licensed to use the trademarked Orangetheory® fitness method. [*Id.* at ¶ 8.]

While there are various UFG franchisees operating in Arizona under franchise agreements with UFG, UFG does not control or operate the independent businesses of those franchisees. [*Id.* at ¶ 12.] Each of the 36 Orangetheory® franchises in Arizona is independently owned and operated, retains its own employees, makes its own choices on marketing (within brand guidelines), and is solely responsible for the day-to-day supervision and control of its business. [*Id.* at ¶ 13.] UFG does not authorize independent franchisees or those franchisees' employees to hold themselves out as "Orangetheory" in communications with the public; instead, franchisees must identify themselves as operating

CASE NO. CV-24-00568-TUC-RM (JR)
DEFENDANT UFG'S MOTION TO DISMISS FAC

a specific Orangetheory-brand studio.  [*Id.* at ¶ 14.]  Finally, all UFG franchise agreements are subject to Florida law—none are subject to Arizona law.  [*Id.* at ¶ 15.]

While two UFG employees reside in Arizona, UFG does not have an office in Arizona, does not own, lease, or have any interest in real property in Arizona, and is not registered to do business in Arizona.  [*Id.* at ¶ 11.]  And persons who enroll to take classes with an Orangetheory-branded fitness studio enter into a membership agreement with their specific local studio (i.e., Orangetheory Tucson), and not with UFG.  [*Id.* at ¶ 16.]

The telephone calls and texts alleged in the FAC to have been made to Plaintiff from various Arizona area-code numbers between October 2021 and July 2024 were not placed by UFG, or placed on UFG's behalf, or at UFG's direction.  [*Id.* at ¶ 17.]  The telephone numbers listed in the FAC as contacting Plaintiff are instead associated with two different franchisees operating various franchised studios in Arizona.  [*Id.* at ¶ 18.][4]  UFG has never itself contacted Plaintiff's phone number or directed a third party to place text messages to Plaintiff's number, as that number never opted-in for texts from UFG.  [*Id.* at ¶ 21–23.]

UFG has only used a (561) Florida-based area code number, which UFG has operated since September 2023, to send limited text messages to opted-in consumers.  [*Id.* at ¶ 22.]  While Plaintiff "infers" that UFG took over an independently owned and operated franchisee's phone number, this is false.  [*Id.* at ¶ 24.]  UFG does not own or operate the Arizona area code 737-881-7727 telephone number from which Plaintiff to have received four text messages between November 23, 2023, and July 30, 2024.  [*Id.*]  The 737 number connects to a voicemail box for "Tucson Central 2", which is not UFG.  [*Id.*]

Finally, UFG does not (as Plaintiff claims) operate its franchisees' Facebook pages.  [*Id.* at ¶ 25–27.]  To ensure brand consistency at launch, as a standard operational procedure, UFG creates the initial Facebook page for new Orangetheory-brand studios.  [*Id.*]  Beyond an administrative role, UFG does not participate in the ongoing day-to-day

---

[4] During the meet and confer process, UFG identified the franchisees associated with these telephone numbers.  Plaintiff would not agree to dismiss claims against UFG and did not seek to amend his Complaint until after UFG filed its first Motion to Dismiss.

CASE NO. CV-24-00568-TUC-RM (JR)
DEFENDANT UFG'S MOTION TO DISMISS FAC

management, organic posting, local marketing, or advertising activities of studio Facebook pages. [*Id.*] And in any case, Plaintiff does not claim to have been contacted via an Arizona studio's Facebook page.

### B.  ARGUMENT

#### 1.  Standards For Assessing Personal Jurisdiction Challenges.

Arizona law permits its Courts to exercise personal jurisdiction "to the maximum extent permitted by . . . the United States Constitution." Ariz. R. Civ. P. 4.2(a); *see also Wal-Mart Stores, Inc. v. LeMaire*, 242 Ariz. 357 (Ct. App. 2017) (applying U.S. Supreme Court precedent to hold Wal-Mart was not subject to personal jurisdiction in Arizona).[5] This constitutional threshold requires courts to consider the contacts which the defendant itself has created with the forum, not the defendant's contacts with persons who reside there. *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) (emphasis added) (citations omitted).

Personal jurisdiction must be established in the forum federal court and can be either (1) general or (2) specific. *See, e.g., Picot v. Weston*; 780 F.3d 1206, 122 (9th Cir. 2015). When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a *prima facie* showing of jurisdictional facts establishing personal jurisdiction. *See Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir. 2006) (affirming grant of defendant's motion to dismiss for lack of personal jurisdiction).

The "mere allegations of a complaint, when contradicted by affidavits, are not enough to confer personal jurisdiction over a non-resident defendant." *Chem Lab Prods., Inc. v. Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977) (internal citation omitted); *see also Alexander v. Circus Circus Enters., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) (internal citation omitted) ("this circuit has held that for purposes of personal jurisdiction, 'we may

---

[5] "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *LNS Enters. LLC*, 22 F.4th 852, 858 (9th Cir. 2022) (quoting *Daimler*, 571 U.S. at 125); *see also Ariz. Sch. Risk Retention Tr., Inc. v. NMTC, Inc.*, 169 F. Supp. 3d 931, 935 (D. Ariz. 2016) (internal citation omitted) ("Where, as here, there is no applicable federal statute governing personal jurisdiction, the Court applies the law of the state in which it sits.").

CASE NO. CV-24-00568-TUC-RM (JR)
DEFENDANT UFG'S MOTION TO DISMISS FAC

not assume the truth of allegations in a pleading which are contradicted by affidavit.'"); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (internal citation omitted) ("When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'").

### 2. The FAC Does Not Establish General Jurisdiction over UFG.

General jurisdiction requires that a foreign corporation's affiliations with the forum state be so "continuous and systematic" that the corporation is rendered "essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quoting *Goodyear*, 564 U.S. at 919); *id.* at 138–39. The U.S. Supreme Court has expressly rejected the idea as "unacceptably grasping" that general jurisdiction can be exercised in every state where a corporation "engages in a substantial, continuous, and systematic course of business." *Daimler,* 571 U.S. at 137–38; *id.* at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them[;] [o]therwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States."). Further, the Supreme Court held in *Daimler* that an agency theory can no longer be used to create general jurisdiction. *Daimler,* 571 U.S. at 134–36; *see also Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017) ("*Daimler* voided our agency approach for imputing contacts for the purpose of general jurisdiction[.]").

Thus, establishing general jurisdiction over a non-resident defendant is an exacting standard, and is limited, with rare exception not applicable here, to only the "place of incorporation and principal place of business." *Daimler,* 571 U.S. at 137 (internal citations omitted) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradigm . . . bases for general jurisdiction'" and "have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable."); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (internal citation omitted) ("This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be hauled into court in the forum state to answer for any of its activities anywhere in the world.").

CASE NO. CV-24-00568-TUC-RM (JR)
DEFENDANT UFG'S MOTION TO DISMISS FAC

Given this law, and the facts detailed in UFG's jurisdictional declaration, there is no general jurisdiction here over UFG. There is simply nothing connecting UFG (a Delaware corporation with its principal place of business in Florida) to Arizona that meets the "exacting standard" of general jurisdiction. *See Daimler*, 571 U.S. at 137; *see also LeMaire*, 242 Ariz. at 358–59, 362–63, ¶¶ 1–2, 20–21 (holding no general jurisdiction in Arizona existed over Wal-Mart, a Delaware corporation with its principal place of business in Arkansas, even though in Arizona Wal-Mart had 127 retail locations, four distribution centers, 33,910 employees, spent $1.5 billion with suppliers, collected $270.3 million in Arizona sales taxes, and paid $91.5 million in Arizona taxes).

### 3.     The FAC Does Not Establish Specific Jurisdiction Over UFG.

Turning to the specific personal jurisdiction inquiry, this avenue to establishing personal jurisdiction "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 284 (internal citation omitted); *Bristol-Myers*, 137 S. Ct. at 1779 (citing *Walden* for the proposition that the "primary focus" of the "personal jurisdiction inquiry is the defendant's relationship to the forum State"). Specific jurisdiction is "case-linked," meaning that the lawsuit must arise out of or relate to the defendant's purposeful conduct in the state. *Walden*, 571 U.S. at 284 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.").

Significantly, the defendant's relationship with the forum state "must arise out of contacts that the 'defendant himself' creates with the forum State" and "not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 284–85 (internal citations omitted). A "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286 (internal citation omitted); *id.* ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's

CASE NO. CV-24-00568-TUC-RM (JR)
DEFENDANT UFG'S MOTION TO DISMISS FAC

unconnected activities in the State." *Bristol-Myers,* 137 S. Ct. at 1781 (citing *Goodyear*, 564 U.S. at 930 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.")).

In other words, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers,* 137 S. Ct. at 1780 (emphasis added) (internal citation omitted).  A "defendant's general connections with the forum are not enough" because even continuous activity within a state does not "support the demand that the corporation be amenable to suits unrelated to that activity." *Id.* at 1781 (internal citation omitted).

Given the facts averred to in the jurisdictional declaration, it is clear that the phone calls and texts at issue were placed not by UFG but by independently owned and operated Arizona-based franchisees in furtherance of their own businesses, and that UFG did not direct the messaging.  *See* Part I(A)(2).  Thus,  Plaintiff has alleged no actions **by UFG** that were specifically directed into Arizona to support specific jurisdiction here.  Indeed, if this case could be brought in Arizona under a specific jurisdiction theory based on UFG's actions from its "head office" in Florida, contracting with Arizona-based franchisees which then called or texted Plaintiff to encourage visits to their franchised locations, then this action could be brought in any federal court in the United States where an Orangetheory® franchisee similarly contacted its local members—which does not comport with the Supreme Court's view on specific personal jurisdiction.  *See Walden*, 571 U.S. at 286.

As *Walden* explained:  "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Id.* at 290. *See, e.g., Vantage Mobility Int'l LLC v. Kersey Mobility LLC*, No. CV-19-04684-PHX-JJT, 2020 WL 263617, at *4 (D. Ariz. Jan. 17, 2020) (dismissing defendant under Rule 12(b)(2) after finding that the plaintiff failed to show purposeful direction on the part of defendant towards Arizona).  Plaintiff fails to establish how UFG could possibly have had fair warning that the alleged conduct in this lawsuit, which was directed (if at all) worldwide from Florida, would be subject to the jurisdiction

of Arizona courts.  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72 (1985). Accordingly, UFG has no substantial contacts with Arizona related to this lawsuit sufficient to justify the Court's exercise of specific jurisdiction over it.

This Court thus should dismiss UFG pursuant to Rule 12(b)(2).  If it so rules, the Court need not consider UFG's alternative Motion to Dismiss that follows below.

## II.   ALTERNATIVE MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

If the Court does find that personal jurisdiction exists, then claims against UFG should be dismissed under Rule 12(b)(6) because the FAC fails to assert a claim of relief against UFG that is plausible on its face.

There are two theories of liability under which a defendant can be found liable under the TCPA for making a call (which includes placing a text):  "the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call."  *Abante Rooter & Plumbing v. Farmers Grp.*, No. 17-cv-03315, 2018 WL 288055, at *4 (N.D. Cal. Jan 4, 2018) (citing *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877–79 (9th Cir. 2014)).  Here, the allegations on the face of the FAC do not make plausible Plaintiff's claims that UFG itself placed the four texts at issue, given that the FAC's bald and conclusory statements and theories that the communications originated from UFG are not to be taken as true—particularly when they are contradicted by other factual allegations in the FAC associating the originating phone number with a local franchise.  Further, Plaintiff does not sufficiently allege facts that would sufficiently support any of the three viable theories of vicarious liability for calls placed by an entity other than UFG itself.

Plaintiff's TCPA claims have not risen above a speculative level, as is required by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The UFG should be dismissed as pursuant to Rule 12(b)(6)—and the claims against UFG should be dismissed with prejudice, given that Plaintiff had the opportunity to amend his complaint and added only speculation and "inferences", and not facts that would make likely UFG's liability.

### MEMORANDUM OF POINTS AND AUTHORITIES

While Plaintiff draws "inferences" from various Internet content that he added into

11

the FAC, he has not shown through well-pleaded facts that UFG's liability is more likely than not if the FAC's actual factual allegations (and not speculations) are taken as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (citations omitted).

Plaintiff wants to hold UFG liable for calls placed to him over three years by various persons and entities identifying themselves as tied to various Orangetheory-branded fitness studios in Arizona.   UFG, however, can only be directly liable for its own calls or, alternatively, could be vicariously liable for calls placed by someone acting as its agent. *See, e.g., Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168, 2021 WL 3709854, at *4 (D. Ariz. Aug. 20, 2021) ("[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller.")(quoting *Gomez*, 768 F.3d at 877–78 (9th Cir. 2014)).  Facts alleged that involve calls or texts placed by third parties must demonstrate a plausible agency relationship, requiring "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In short, Federal courts require more than speculation, legal conclusions, and vague allegations to proceed with a TCPA claim—but that is all Plaintiff offers.  TCPA claims should be dismissed when a complaint does not sufficiently allege facts supporting direct calls by the defendant or a likelihood of a principal-agent relationship between the defendant and caller.  *See, e.g.*, *Freidman v. Massage Envy Franchising, LLC*, No. 3:12-cv-02962, 2013 WL 3026641, *3–4 (S.D. Cal. June 13, 2013) (dismissing TCPA complaint against franchisor that was devoid of factual allegations establishing the likelihood of principal-agency relationship); *see also DeClements v. RE/MAX LLC,* No. 1:20-CV-02075, 2020 WL 9259326, at *4 (D. Colo. Oct. 13, 2020) (dismissing TCPA complaint against franchisor that did not plausibly allege sufficient facts establishing agency liability).

CASE NO. CV-24-00568-TUC-RM (JR)
DEFENDANT UFG'S MOTION TO DISMISS FAC

## A. Plaintiff's Speculative Allegations Regarding UFG Do Not Make Plausible UFG's Direct Liability for The Calls/Texts.

Plaintiff claims that "[UFG] *most likely* sent the four text messages from 737-881-7727 between November 23, 2023, and July 30, 2024."  [FAC ¶ 21 (emphasis added).]  However, the FAC evidences that the text messages he received from this number at this time **on their face** are from the Tucson Central studio.  [*Id.* ¶ 14(xxii-xxv) ("We miss you at Orangetheory Fitness *Tucson Central…*") (emphasis added).]  Plaintiff speculates that UFG commandeered this phone number from its franchisee based on a combination of things he found on the Internet and his interpretation of this "evidence":  (1) a marketing company overhauled UFG's digital marketing, (2) UFG streamlined its lead management technology, (3) UFG posted a text messaging terms and conditions, (4) the texts began including "STOP to opt out" language, and (5) the Orangetheory Tucson Central Facebook page states that UFG "is responsible for this Page."  [*Id.* ¶¶ 22–26.]  However, none of these unverified and creative "facts" makes likely the FAC's theory that UFG seized its franchisee's phone number and began texting Plaintiff itself.

Because the messages from 737-881-7727 after November 23, 2023, themselves (according to the FAC) identify the text sender as being OTF Tucson Central, and because Plaintiff makes no factual allegations that would make plausible that UFG itself placed these communications or operated the at-issue phone number, the FAC fails entirely to make plausible a theory of direct liability.

## B. The FAC Fails to Allege A Viable Theory Of Vicarious Liability.

As the Ninth Circuit has recognized, "vicarious liability can provide the basis for liability for a TCPA violation." *Thomas v. Taco Bell Corp.*, 582 Fed. Appx. 678, 679 (9th Cir. 2014).  If there is no viable theory of agency to support a continued cause of action, however, the vicarious liability complaint should be dismissed.  *See, e.g., Rogers v. Postmates Inc.,* No. 19-CV-05619-TSH, 2020 WL 1032153, at *3 (N.D. Cal. Mar. 3, 2020) ("Since Rogers' FAC alleges no facts giving rise to a plausible inference that Postmates directly sent the text at issue, his complaint rises or falls depending on whether it plausibly

alleges that Postmates had an agency relationship with the person or entity who did. If it does not, Rogers has no viable claim under a theory of vicarious liability."). There are three agency relationships that can support a TCPA vicarious liability claim: (1) actual authority, (2) apparent authority, and (3) ratification. *See, e.g., Kristensen*, 879 F.3d at 1014.

To pursue a vicarious liability claim under the TCPA, a plaintiff must do more than simply assert that a caller is an agent of the defendant. Instead, to comport with Rule 12(b)(6)'s requirements, **factual allegations** must make liability plausible. *See, e.g., Pascal v. Agentra, LLC*, No. 19-CV-02418, 2019 WL 5212961, at \*3 (N.D. Cal. Oct. 16, 2019) (dismissing TCPA complaint, and noting "[t]he court concludes that the FAC does not sufficiently allege the existence of an agency relationship between [defendant] on the one hand and [the caller], on the other.") Plaintiff failed to meet his burden with the FAC.

### 1. The FAC Does Not Plausibly Allege Actual Authority.

First, to state a plausible claim for actual authority, a "plaintiff must allege facts showing that [the principal entity] had the right to control [the agent entity] and the manner and means of the calls." *Naiman v. TranzVia LLC,* No. 17-cv-4813, 2017 WL 5992123, at \*6 (N.D. Cal. Dec. 4, 2017) (internal citations omitted) (dismissing TCPA complaint which had "not pled a single fact" demonstrating that defendant had actual control over the caller such that it can be vicariously liable for the caller's purported violations of the TCPA.).

Here, Plaintiff does not allege any facts to show that UFG controlled the self-identified callers/texters (Clarissa, Trinity, and various Arizona studio locations), let alone that any caller/texter was authorized to act as an agent for UFG, and thus has alleged no basis for TCPA liability based on a claim the callers were **actual agents** of UFG. *See Naiman*, 2017 WL 5992123, at \*10 ("plaintiff fails to plead facts showing that [Defendant] entered into any arrangement with, or exercised control over, [the caller] individually.") (emphasis in original). The allegations that a franchise disclosure document issued June 4, 2024 (1) directs franchisees to spend money on marketing, (2) requires franchisees to approve marketing plans, (3) gives UFG the final decision on creative messages, (4) directs franchisees to use a specified technology for contact management, and (5) indicates UFG

will provide training on marketing, does not show that UFG directed Austin Fitness or Lucky7th to text and call Plaintiff on UFG's behalf.

Courts within this Circuit do not permit TCPA complaints to proceed when facts establishing a likelihood of actual agency are absent, given the directives of *Iqbal* and *Twombly*. *See, e.g.*, *Canary v. Youngevity Int'l, Inc.*, No. 5:18-cv-03261-EJD, 2019 WL 1275343, at *5–6 (N.D. Cal. Mar. 20, 2019) (dismissing TCPA complaint after finding that allegations of "encouraging" or "allowing" sales calls were "too general and conclusory to plead that Youngevity authorized the March 15 call in a written or oral communication" so as to support actual authority theory of agency); *see id.* at *8 (allegations that defendant controlled "manner and means" of a call not sufficient factual allegations pertaining to the call at issue, as "[n]one of these allegations are sufficient to support a plausible inference that Youngevity controlled the specific person or entity that allegedly made the March 15 call[.]"); *see Friedman*, 2013 WL 3026641 at *4 (complaint simply stating that one defendant "was acting as an agent and/or employee" of defendant contains only legal conclusions and not facts, which means that an agency relationship was insufficiently pled); *see also Pascal,* 2019 WL 5212961 at *3 (conclusory allegations of defendant knowingly and actively accepting business originating from calls by a DOE caller were insufficient to support a theory of actual authority).

### 2.      The FAC Does Not Plausibly Allege Apparent Authority.

Second, to state a plausible claim under an apparent authority theory, "plaintiff must allege facts showing that [the principal entity] did or said something sufficient to create a reasonable belief that [the agent entity] had authority to act on behalf of [it]." *Naiman*, 2017 WL 5992123, at *7 (internal citations omitted) ("Apparent authority cannot be shown by allegations that the alleged agent 'claimed authority or purported to exercise it.'"); *see also Thomas,* 582 Fed. Appx. at 679–80 (9th Cir. 2014) ("Thomas has not shown that she reasonably relied, much less to her detriment, on any apparent authority with which Taco Bell Corp. allegedly cloaked the Chicago Association[.]")

15

Here, there are no allegations that **UFG** made any representations **to Plaintiff** that would create a reasonable belief that the callers contacting him from the Arizona-area-code numbers had authority to act on behalf of UFG.  Thus, Plaintiff have not shown that an apparent authority theory of vicarious liability is plausible.  Moreover, the FAC makes clear that even the callers themselves were not alleged to be holding themselves out as UFG:  the callers were generally identified as affiliated with local studios.  [*See* FAC ¶ 14.]

Notably, the crucial component of "apparent authority" is not what the caller says, even if the callers had claimed to be from UFG, a plaintiff fails to plead apparent authority theory for a TCPA claim where he or she "does not allege that he reasonably relied upon something said or done by [defendant] to his detriment[.]"  *Canary*, 2019 WL 1275343, at *8; *see also Pascal,* 2019 WL 5212961, at *4 (same).  Indeed, as one federal court noted when dismissing TCPA claims asserted against RE/MAX LLC, the franchisor, even if calls were alleged to have been placed by RE/MAX agents identifying themselves as "RE/MAX" rather than as affiliated with a specific franchisee, apparent authority requires more to state a viable TCPA claim.  *See DeClements,* 2020 WL 9259326, at *4 ("If the court were to accept the use of a franchisor's name as the sole basis for franchisee-franchisor liability, that would mean that a franchisor would always be liable for the acts of its franchisees" so that "the use of a franchisor's name alone isn't sufficient to state a claim of vicarious liability for franchisees' agents' phone calls on an apparent-authority theory.").

### 3.    The FAC Does Not Plausibly Allege Ratification.

Finally, the Ninth Circuit has confirmed that a third theory of agency can support vicarious liability under the TCPA—ratification.  Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority."  *Kristensen*, 879 F.3d at 1014 (quoting Restatement (Third) of Agency § 4.01(1)).  "Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it."  *Thomas*, 582 Fed. Appx. at 680 (quoting *Batzel v. Smith*, 333 F.3d 1018, 1036

(9th Cir. 2003) (superseded in part by statute on other grounds) (footnote omitted)).

Here, Plaintiff alleges UFG ratified the conduct of its franchisees by knowingly accepting a percentage of their gross monthly sales from the outreach at issue and failing to take action to end violations of its franchisees.  [FAC ¶ 32(iv–v).]  However, nothing in the June 2024 Franchise Disclosure Document demonstrates that UFG reviewed and approved a plan by Austin Fitness or Lucky7th to call or text Plaintiff without consent, therefore there was no "knowing" acceptance of money from illegal conduct.  [*Id.* ¶¶ 28–34, Ex. A.]  Additionally, the TCPA cases Plaintiff cites are not claimed to have found UFG or its franchisees in violation of the TCPA, [*id.* ¶ 5, n. 1]; therefore, they do not demonstrate a knowledge of TCPA violations by UFG's franchisees that was in need of correcting.  *See Rogers,* 2020 WL 1032153, at *5 (dismissing TCPA complaint and noting that speculation regarding a defendant's ratification of conduct is not enough to "make it through a challenge to the pleadings" when a plaintiff is "armed with nothing more than conclusory allegations and speculation" regarding such agency theories).  Thus, the third potential basis for vicarious liability, too, is not established in the FAC.

## III.    CONCLUSION

UFG respectfully requests that the Court dismiss UFG for lack of personal jurisdiction pursuant to Rule 12(b)(2).  Alternatively, UFG requests that the Court dismiss the FAC's allegations against UFG pursuant to Rule 12(b)(6) for failing to state a claim—and to dismiss UFG with prejudice, given that Plaintiff had the opportunity to amend his claims after reviewing the original Motion to Dismiss, and still failed to assert a plausible claim against UFG.

Dated:   April 11, 2025                              Respectfully Submitted,

By:   */s/ Kenneth O. Corley*
Kenneth O. Corley (SBN 024285)
KELLEY DRYE & WARREN LLP

*Attorneys for Defendant*

17

## CERTIFICATE OF SERVICE

I hereby certify that, on April 11, 2025, I electronically filed the foregoing ULTIMATE FITNESS GROUP, LLC'S MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(2) FOR LACK OF PERSONAL JURISDICTION; IN THE ALTERNATIVE, MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6) with the United States District Court for the District of Arizona by using the CM/ECF system, which will send a notice of filing to all registered users, including counsel for all parties.

DATED: April 11, 2025

Respectfully submitted,

*/s/ Kenneth O. Corley*
Kenneth O. Corley (SBN 024285)

18

CASE NO. CV-24-00568-TUC-RM (JR)
DEFENDANT UFG'S MOTION TO DISMISS FAC